UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOYCE WALSH,<br>        Plaintiff,<br><br>    v.<br><br>LAW OFFICES OF HOWARD<br>LEE SCHIFF, P.C., and<br>JEANINE DUMONT,<br>        Defendants. | No. 3:11-cv-1111 (SRU) |

### RULING ON DEFENDANTS' MOTIONS TO DISMISS

Joyce Walsh ("Walsh") brought this consolidated action[1] against Law Offices of Howard Lee Schiff, P.C. ("HLS") and Jeanine Dumont, Esq. (collectively "defendants") alleging violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*. ("CUTPA"), arising out of a pair of debt collection lawsuits that defendants previously filed against Walsh in state superior court.  Before the court are defendants' motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, defendants' motions (docs. # 18 and # 33) are GRANTED.

### I.    Background

The following facts, which the court accepts as true, are drawn from the plaintiff's consolidated complaints, filed on July 13, 2011[2] and September 8, 2011,[3] respectively.

---

[1] The actions were originally captioned as follows:  *Joyce Walsh v. Law Offices of Howard Lee Schiff, P.C. and Jeanine Dumont*, 3:11-cv-1111 (SRU), and *Joy Walsh v. Law Offices of Howard Lee Schiff, P.C. and Jeanine Dumo*nt, 3:11-cv-1408 (CFD).  The actions were consolidated on February 13, 2012 (doc. # 34).

[2] *Joyce Walsh v. Law Offices of Howard Lee Schiff, P.C. and Jeanine Dumont*, 3:11-cv-1111 (SRU).

Joyce Walsh is a resident of Portland, Connecticut.  HLS is a law firm, registered as a professional corporation in the state of Connecticut, that is regularly engaged in debt collection. Jeanine Dumont is an attorney with HLS.

In 2010, Discover Bank claimed that Walsh owed over $15,000 in credit card debt, and Attorney Dumont, working on behalf of HLS, filed a pair of lawsuits in state court seeking to collect.[4]  Prior to retaining Attorney J. Hanson Guest, Walsh briefly represented herself *pro se* in both actions.  According to the complaints, defendants "made multiple false, deceptive, and/or misleading representations in the course of litigating the Action and used unfair acts, deceptive practices, and wrongful means in attempts to collect the Alleged Debt."  *See* Compl. (July 13, 2011), at ¶ 17; Compl. (Sept. 8, 2011), at ¶ 18.[5]

All of Walsh's claims arise out of discovery disputes and alleged procedural misconduct during the course of the underlying state court litigation.  What follows summarizes the allegations concerning defendants' actions during those proceedings.

In her July 13, 2011 complaint, Walsh alleged that: (1) on July 14, 2010, while Walsh was still defending herself *pro se*, Dumont filed an objection to a request for extension of time, claiming Walsh's discovery requests were "drafted by someone not licensed in Connecticut and

---

[3] *Joy Walsh v. Law Offices of Howard Lee Schiff, P.C. and Jeanine Dumo*nt, 3:11-cv-1408 (CFD).

[4] It appears that two different lawsuits were filed because Walsh opened her accounts in two different names:  "Joy" Walsh and "Joyce" Walsh.  The first lawsuit, captioned *Discover Bank v. Joy Walsh*, No. MMX-CV10-6002125 (Middletown Super. Ct.), was filed on March 29, 2010 and sought to collect an alleged debt of $9,576.51.  The second lawsuit, captioned *Discover Bank v. Joyce Walsh*, No. MMX-CV10-6002296-S (Middletown Super. Ct.), was filed on April 19, 2010 and sought to collect an alleged debt of $6,378.06.

[5] According to Walsh, both state court actions were eventually withdrawn after defendants discovered procedural and factual inadequacies with their claims.

obtained over the Internet as part of a scam," Compl. (July 13, 2011), at ¶¶ 22-23; (2) on July 15, 2010, Dumont filed a cover sheet to her responses to Walsh's requests for admission, stating she objected to the requests "on the grounds that these are pro forma definitions drafted by someone who is not licenses [sic] to practice law in Connecticut and how [sic] may not ethically provide legal advice to the Defendant [Walsh]; this person needs to be reported to the statewide grievance committee since this conduct is illegal and a scam," *id.* ¶ 25; (3) on February 22, 2011, after Walsh retained counsel, Dumont filed an affidavit in support of another discovery motion in which she admitted to having sent Walsh bank statements related to a different case and alleging that Walsh's attorney, J. Hanson Guest, "'threatened and bullied' her during telephone communications," *id.* ¶¶ 26-28; (4) on December 16, 2010, Dumont filed a Motion for Default, which was premature because Walsh had until January 6, 2011 to respond; and (5) throughout the litigation, Dumont certified that her pleadings were mailed on the dates that they were filed, despite the fact that several of her mailings "were not postmarked until one or two days after the pleading was certified to have been mailed," *id.* ¶¶ 31-32.

In the September 8, 2011 complaint, Walsh alleged that: (1) on September 10, 2010, while Walsh was still defending herself *pro se*, Dumont filed a Motion to Strike Walsh's Notice of Service of Requests for Admissions, falsely claiming she never received the requests and that the notice of service was improperly filed, despite the fact that a certified mail return receipt was signed on behalf of HLS, showing service was timely made, Compl. (Sept. 8, 2011), at ¶¶ 23-27; (2) Dumont failed to answer discovery and "thereafter sought to cover up her failure with false statements, fabricated documents, and a false affidavit," *id.* ¶ 29; (3) Dumont made contradictory statements in an affidavit filed in support of her motion for relief from requests for admissions, *id.* ¶ 30-31; (4) on December 29, 2010, Dumont made false statements in an affidavit opposing

Walsh's Motion for Sanctions, Contempt and Dismissal for Discovery and Litigation Misconduct, including: (i) falsely denying receipt of discovery materials; (ii) falsely denying receipt of Notice of Request for Admissions; and (iii) falsely stating that Attorney Guest was not cooperative, *id.* ¶¶ 35-36; (5) Dumont filed a premature Motion for Default, despite the fact that Walsh had obtained an extension of time, *id.* ¶¶ 37-38; and (6) Dumont failed to mail pleadings on the dates that were indicated on the certificates of service, *id.* ¶ 39.

Walsh claims that the above actions violated the anti-fraud provisions of the FDCPA, 15 U.S.C. § 1692e, as well as the CUTPA, and caused her to suffer "monetary damages; an ascertainable loss of money or property; humiliation, mental pain and anguish; and, damages to her credit report and reputation." *See* Compl. (July 13, 2011), at ¶ 18; Compl. (Sept. 8, 2011), at ¶ 19. Defendants responded by filing the instant motions to dismiss for failure to state a claim (docs. # 18 and # 33).

## II.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the

speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; s*ee also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

"On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Matson v. Bd. of Educ.*, 631 F.3d 57, 62 (2d Cir. 2011) (quotation omitted).

**III.    Discussion**

    A.    FDCPA Claims

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to [en]sure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 120 (2d Cir. 2011) (quoting 15 U.S.C. § 1692(e)). Section 1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692(e). Such conduct includes "[t]he

use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer." 15 U.S.C. § 1692e(10).  For purposes of the FDCPA, a "debt collector" is "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due."  15 U.S.C. § 1692a(6). Attorneys who regularly engage in debt collection activities, such as defendants here, are regarded as debt collectors, and their conduct as such is regulated by the FDCPA.  *See Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (holding that the FDCPA "applies to a lawyer who 'regularly,' through litigation, tries to collect consumer debts").[6]

"[T]he question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'"  *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 2003)). "This objective standard is designed to protect all consumers, the gullible as well as the shrewd, while at the same time protecting debt collectors from liability for bizarre or idiosyncratic interpretations of collection notices."  *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998) (internal quotations omitted); *see also Clomon*, 988 F.2d at 1318-

---

[6] In her opposition briefs, Walsh argues at length that the FDCPA implicitly abrogates common-law privileges that would otherwise immunize from liability statements by attorneys made during the course of litigation.  *See* Pl.'s Mem. in Opp'n (doc. # 53), at 7-10; Pl.'s Mem. in Opp'n (doc. # 54), at 7-10.  Indeed, several courts have held that, because the FDCPA is a strict liability statute that applies to attorney communications, *see Heintz*, 514 U.S. at 299 ("[T]he Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."), the FDCPA contains no exceptions based on common-law litigation privileges.  *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011) ("The FDCPA does not contain an exemption from liability for common law privileges."); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir. 2007) ("The statutory text makes clear that there is no blanket common law litigation immunity from the requirements of the FDCPA.").  Defendants, however, make no claim that Walsh's FDCPA claims are barred by any common-law privilege.  Therefore, for purposes of these motions, I will assume that no such privilege applies to the FDCPA claims.  However, as explained *infra*, the same analysis does not apply to the plaintiff's CUTPA claims arising under state law.

20.  The test aims at balancing the need to protect consumers against the need to ensure that debt collectors are not held liable "for unreasonable misinterpretations of collection notices." *Clomon*, 988 F.2d at 1319.  This objective standard presumes the consumer possesses at least a "rudimentary amount of information about the world."  *Id.*

Several courts have held that the least-sophisticated-consumer standard also encompasses a materiality requirement; that is, statements must be *materially* false or misleading to be actionable under the FDCPA.  *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) ("Although Congress did not expressly require that any violation of § 1692e be material, courts have generally held that violations grounded in "false representations" must rest on material misrepresentations."); *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) ("[A] statement must be materially false or misleading to violate Section 1692e."); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) ("[F]alse but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under § 1692e."); *Hahn v. Triumph P'ships*, 557 F.3d 755, 757-58 (7th Cir. 2009) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable.").  Although the Second Circuit has yet to squarely address the issue, district courts within this circuit agree that false or misleading statements do not come within the ambit of section 1692e unless such statements are material.  *See Gabrielle v. Law Office of Martha Croog*, 2012 WL 460264, at *2 (D. Conn. Feb. 9, 2012) ("Courts considering a FDCPA violation have looked to whether a statement is materially false or misleading.") (citing *Lane v. Fein, Such and Crane, LLP*, 767 F. Supp. 2d 382, 389 (E.D.N.Y. 2011));  *Klein v. Solomon & Solomon, P.C.*, 2011 WL 5354250, at *2 (D. Conn. Oct. 28, 2011) ("Even if a statement is false in some technical sense, it does not violate the statute unless it would mislead the unsophisticated

consumer. . . . Statements are materially false and misleading if they influence a consumer's decision or ability to pay or challenge a debt."); *Hasbrouck v. Arrow Fin. Services LLC*, 2011 WL 1899250, at * 4 (N.D.N.Y. May 19, 2011) ("Moreover, there is a materiality requirement for allegedly false statements under § 1692e."); *Corazzini v. Litton Loan Servicing LLP*, 2010 WL 6787231, at *7 (N.D.N.Y. June 15, 2010) ("[E]ven if defendant did provide a false statement in one or more of its communications with plaintiff, plaintiff has failed to establish that the alleged false statement was *material* to her decision to pay her debt or that it impaired her ability to challenge the debt.") (emphasis added).

Finding these authorities persuasive, I hold that the least-sophisticated-consumer standard does contain a materiality requirement. In my view, the requirement of materiality is in harmony with the dual purposes of the least-sophisticated-consumer standard: the need to protect unsuspecting consumers from unscrupulous debt collectors and the need to ensure that debt collectors are not held liable "for unreasonable misinterpretations." *Clomon*, 988 F.2d at 1319; *see also Maguire*, 147 F.3d at 236 ("In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' *would be deceived by* the collection practice.") (emphasis added). As other courts have recognized, "immaterial statements, by definition, do not affect a consumer's ability to make intelligent decisions" concerning an alleged debt. *Donohue*, 592 F.3d at 1034 (citing *Hahn*, 557 F.3d at 757-58). Imposing liability for technical falsehoods that have no bearing on the debt or the ability to dispute it furthers no conceivable consumer interest under the FDCPA and only increases the cost of credit by subjecting debt collectors to frivolous claims. *See Hasbrouck*, 2011 WL 1899250, at *4 ("An immaterial statement or information does not contribute to the objective of the FDCPA nor does it undermine it."). Thus, an alleged false or misleading

statement is not actionable under section 1692e unless the statement is "material," meaning that the statement would "influence a consumer's decision or ability to pay or challenge a debt." *Klein*, 2011 WL 5354250, at *2.

Applying this standard to the case at bar, Walsh fails to state a claim under section 1692e. The communications at issue fall into two main categories:  (1) statements made while Walsh was defending herself *pro se*; and (2) statements made after Walsh retained counsel.  I divide my analysis accordingly.

*1.  Alleged Communications to Self-Represented Party*

Walsh alleges that three communications occurred while she was still representing herself *pro se* in the underlying litigation:  (1) the filing of an objection to a motion for extension of time, which claimed that Walsh's discovery requests were "drafted by someone not licensed in Connecticut and obtained over the Internet as part of a scam;" (2) the filing of an objection to requests for admission, which claimed that Walsh's requests were "pro forma definitions drafted by someone who is not licenses [sic] to practice law in Connecticut and how [sic] may not ethically provide legal advice to the Defendant [Walsh]; this person needs to be reported to the statewide grievance committee since this conduct is illegal and a scam;" and (3) the filing of a motion to strike, which falsely claimed that defendants never received requests for admissions and that notice of service was improperly filed.  *See* Compl. (July 13, 2011), at ¶¶ 22-23, 25; Compl. (Sept. 8, 2011), at ¶¶ 23-27.

Even assuming the truth of these allegations, and drawing all reasonable inferences in the plaintiff's favor, Walsh has failed to allege how any of these statements were *materially* false or misleading.  Indeed, nowhere does Walsh assert that these statements caused her any confusion about the validity or amount of the debt or otherwise impeded her ability to pay or challenge it.

Rather, all three communications were directed at the *court*, rather than Walsh herself, and concerned procedural deficiencies during the course of litigation that bore no relation to the underlying debt. *See Klein*, 2011 WL 5354260, at *2 (dismissing FDCPA claim where "the allegations of the complaint describe[d] procedural defects in connection with state court litigation" and where "plaintiff d[id] not allege that defendants made a representation or statement that impeded his ability to pay or challenge the debt that he incurred"); *McAfee v. Law Firm of Forster & Garbus*, 2008 WL 3876079, at *5 (E.D.N.Y. Aug. 18, 2008) (rejecting FDCPA claim when "all of Plaintiff's claims relate solely to Defendants' alleged improprieties in prosecuting a court action against him in state court").

In her opposition briefs, however, Walsh contends that defendants' false representations were material because they "undermined her ability to defend the debt" and forced her to retain counsel at considerable expense. Pl.'s Mem. in Opp'n (doc. # 53), at 19; Pl.'s Mem. in Opp'n (doc. # 54), at 19. Walsh's argument is unpersuasive.

First, as a matter of policy, the FDCPA's core purpose—protecting unsophisticated consumers from unscrupulous debt collectors—is not implicated by discovery motions and other pretrial proceedings in state court, a process that is already regulated by the court system and continually monitored by the presiding judge. *Cf. Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (noting that, in the bankruptcy context, "[w]hile the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers."); *Derisme v. Hunt Leibert Jacobson P.C.*, 2012 WL 3000386, at *16 (D. Conn. July 23, 2012) ("Ultimately, the courts supervise and have the authority to discipline, including the power to revoke the license to practice law of any attorney who abuses the judicial process or otherwise fails to fulfill

her or his professional responsibility. . . . In addition disciplinary proceedings may be initiated by a debtor harmed by the conduct of an unscrupulous or less than diligent attorney.") (citing Connecticut Practice Book, § 2-44). Because litigants in state court already enjoy myriad procedural and substantive protections from fraudulent and deceptive practices, resort to the FDCPA is unnecessary. *See Derisme*, 2012 WL 3000386, at *16.

Moreover, the fact that Walsh was compelled to retain counsel to defend against the debt does not transform defendants' procedural misconduct into material misrepresentations within the ambit of section 1692e. Even if Walsh was forced to incur unnecessary attorneys' fees and other costs to respond to defendants' frivolous motions or meritless objections, state court procedures provide the appropriate recourse for such bad faith conduct: sanctions in the form of attorneys' fees. *See Maris v. McGrath*, 269 Conn. 834, 844 (2004) ("It is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons."); *see also* Connecticut Practice Book, § 2-44 ("The superior court may, for just cause, suspend or disbar attorneys and may, for just cause, punish or restrain any person engaged in the unauthorized practice of law.").

Thus, even assuming that the communications during Walsh's self-representation were false, they were not materially so. The misrepresentations at issue concerned assertions made during pretrial proceedings in an adversarial system, not the validity of the underlying debt or the ability to dispute it. As a result, the alleged communications fall outside the reach of section 1692e and Walsh's FDCPA claims must be dismissed.

   *2. Alleged Communications to Attorney-Represented Party*

Walsh also claims that defendants made numerous misrepresentations after Walsh retained counsel in the underlying litigation. In fact, the vast majority of the alleged

communications fall into this category, including: (1) the filing of objections to Walsh's discovery motions in which defendants made false statements; (2) the filing of discovery motions in which Dumont admitted to having sent Walsh bank statements related to a different case and falsely alleged that Walsh's attorney had "threatened and bullied" her; (3) the filing of premature motions for default; (4) the filing of a motion to strike, which falsely claimed that defendants never received requests for admissions and that notice of service was improperly filed; (5) the failure to answer discovery and the attempt to cover up that failure with false statements; (6) the filing of an objection to Walsh's motion for contempt, which included multiple false statements[7]; and (7) the filing of inaccurate certifications that pleadings had been mailed on particular dates. *See* Compl. (July 13, 2011), at ¶¶ 26-28, 31-32; Compl. (Sept. 8, 2011), at ¶¶ 29-31; 35-39.

Walsh's FDCPA claims predicated on this latter batch of communications fail to pass muster for at least two reasons. First, all of these communications involve procedural defects in the underlying litigation that were immaterial to the amount, character, or validity of the debt. Thus, for substantially the same reasons outlined above, Walsh fails to state a claim under the section 1692e because the allegedly false or misleading statements lack materiality. *See Klein*, 2011 WL 5354260, at *2.

---

[7] It bears mentioning that, even if defendants made materially false or misleading statements in response to Walsh's motion for contempt, those statements still would not give rise to a FDCPA violation. Based on the plain meaning of the statute, section 1692e's protections are only triggered by conduct "in connection with the collection of any debt." 15 U.S.C. § 1692e. The motion for contempt was, in essence, a collateral proceeding *initiated by Walsh* that no longer concerned the collection of a debt, but rather defendants' misconduct during the course of the litigation. *Cf. Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005) (FDCPA did not apply where "Defendant was not 'attempting to collect a debt' and [where] the communication *instituted by Plaintiff* was not 'in connection with the collection of any debt.'") (quoting 15 U.S.C. § 1692e) (emphasis added).

But even assuming, *arguendo*, that some or all of these communications could be construed as materially false or misleading, Walsh's FDCPA claims nonetheless fail on a different ground. In *Kropelniki v. Siegel*, 290 F.3d 118 (2d Cir. 2002), the Second Circuit observed, albeit in dicta, that "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Id.* at 127. Relying on this passage, multiple district courts within this circuit have held that communications directed at a debtor's *attorney*, rather than the debtor herself, are excluded from the purview of the FDCPA. *See Gabrielle*, 2012 WL 460264, at *3 ("[T]he allegations of the complaint describe procedural defects in connection with state court litigation rather than communications with the plaintiff-debtor. The communications at issue were directed to the state court and to the plaintiff's lawyer. In light of the fact that the statements were made within the legal context of litigation, they cannot be considered to be misleading of plaintiff who was represented by counsel."); *Boyd v. J.E. Robert Co.*, 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010) ("Relying on the Court's reasoning in *Kropelniki*, any communications between [debt collector] and [debtor's] counsel are not actionable under the FDCPA."); *Tromba v. M.R.S. Assocs., Inc.*, 323 F. Supp. 2d 424, 428 (E.D.N.Y. 2004) ("[I]n reliance upon *Kropelnicki*, the Court concludes that, under the circumstances alleged in this case, Plaintiff has no cause of action under the FDCPA where a communication was solely directed to her attorney and no threat was made regarding contact with the debtor herself."). I, too, find *Kropelnicki*'s reasoning persuasive. Where a debtor is represented by an attorney, the protections afforded by section 1692e do not extend to false or misleading statements contained in court filings submitted in the course of on-going litigation.

Here, the communications listed above occurred not only in the context of on-going

litigation, but *after* Walsh retained counsel to represent her in that action. Thus, all of the alleged false statements that were directed solely to Walsh's attorney, rather than to Walsh herself, fall outside the strictures of section 1692e. *See Kropelniki*, 290 F.3d at 127. Accordingly, this subset of Walsh's FDCPA claims must be dismissed.

    B.    <u>CUTPA Claims</u>

CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). In general, there are three criteria for determining whether an act or practice is "unfair" within the meaning of CUTPA:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors, or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

*Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 154-55 (2006). "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." Conn. Gen. Stat. § 42-110g(a).

Here, Walsh admits that her CUTPA claims are predicated on defendants' alleged violations of the FDCPA. *See* Pl.'s Mem. in Opp'n (doc. # 53), at 21-22. As explained above, however, defendants' false communications during the course of the underlying litigation did not amount to a violation of the FDCPA. Therefore, Walsh's CUTPA claims likewise fail.

But even assuming that Walsh's CUTPA claims somehow lie outside of the FDCPA,

those claims, arising under state law, are otherwise barred by the common-law litigation privilege.[8]  "'It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy . . . .  The privilege applies also to statements made in pleadings or other documents prepared in connection with a court proceeding.'" *Derisme*, 2012 WL 3000386, at *27 (quoting *Alexandru v. Strong*, 81 Conn. App. 68, 83 (2004)); *see also Hopkins v. O'Connor*, 282 Conn. 821, 839 (2007) (If "the communications are uttered or published in the course of judicial proceedings, even if they are published falsely and maliciously, they nevertheless are absolutely privileged provided they are pertinent to the subject of the controversy.").  Although few courts have considered the litigation privilege in the context of CUTPA claims, those that have had occasion to do so have upheld the application of absolute immunity.  *See, e.g.*, *SNET Information Servs. v. Vecchitto*, 2007 WL 4212699, at *3 (Conn. Super. Ct. 2007) ("[T]he CUPTA claim is predicated on various representations by SNET regarding the amount of damages sought.  It is undisputed that the representations uttered by the plaintiff were articulated during the course of a judicial proceeding.  As those representations were essential to and published in the course of a judicial proceeding, they are protected by an absolute privilege.").

Here, all of the alleged false communications were made by an attorney in the course of the underlying lawsuit on issues pertinent to the controversy.  Accordingly, defendants' statements are protected by an absolute privilege and Walsh's CUTPA claims must be dismissed.

---

[8] Unlike FDCPA claims arising under federal law, there is no abrogation of common-law litigation immunity for CUTPA claims arising under state law.  Walsh appears to admit as much in her brief.  *See* Pl.'s Mem. in Opp'n (doc. # 53), at 21 ("Normally . . . a party is absolutely immune from liability for statements made during the course of litigation.  However, debt collectors subject to the FDCPA are not immune to false, misleading or deceptive statements

**IV.     Conclusion**

In sum, defendants' motions to dismiss (docs. # 18 and # 33) are GRANTED. The Clerk shall enter judgment and close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 24th day of September 2012.

<u>/s/ Stefan R. Underhill</u>
Stefan R. Underhill
United States District Judge

---

made in the course of litigation.").